UNITED STATES *v.* MERCK & Co. (No. 1802).[1]

1. CONSTRUCTION, PARAGRAPH 387, TARIFF ACT OF 1913—COMMERCIAL PREFERRED TO SCIENTIFIC—"ACIDS: * * * PHOSPHORIC."

While phosphoric acid anhydride may not be chemically an acid, it is commonly and commercially known as an acid; and the expression "Acids: * * * phosphoric" (par. 387, tariff act of 1913) will be held to include it.

2. CONSTRUCTION, PARAGRAPH 387, TARIFF ACT OF 1913—LEGISLATIVE RECOGNITION—"ACIDS: * * * PHOSPHORIC."

Phosphoric acid anhydride was admitted free as phosphoric acid under paragraph 482, tariff act of 1909, and Congress, in the enactment of paragraph 387, tariff act of 1913, admitting free "acids: * * * phosphoric," must be presumed to have recognized this.

3. CONSTRUCTION, PARAGRAPHS 1 AND 387, TARIFF ACT OF 1913—RELATIVE SPECIFICITY—"ACID ANHYDRIDES"—"ACIDS: * * * PHOSPHORIC."

With reference to phosphoric acid anhydride, paragraph 1, tariff act of 1913 ("acid anhydrides"), is less specific than paragraph 387 ("acids: * * * phosphoric"), since it includes the anhydrides of all acids; while paragraph 387 includes the anhydride of phosphoric acid only.

4. PHOSPHORIC ACID ANHYDRIDE.

Phosphoric acid anhydride is admissible free under paragraph 387, tariff act of 1913, as phosphoric acid. Smaller packages of it are not dutiable as chemical compounds or combinations put up in individual packages of two and one-half pounds or less gross weight (par. 17), and larger packages are not dutiable as acid anhydrides (par. 1).

United States Court of Customs Appeals, May 21, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40440.

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

*Allan R. Brown (Allan R. Brown* and *Charles A. Darius* of counsel) for appellees.

[Oral argument Apr. 25, 1917, by Mr. Hanson and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Phosphoric acid anhydride imported at the port of New York in packages of 2½ pounds or less gross weight was classified by the collector of customs as a chemical or medicinal compound dutiable at 20 per cent ad valorem under the provisions of paragraph 17 of the

[1] T. D. 37270 (33 Treas. Dec., 34).

tariff act of 1913. Phosphoric acid anhydride imported in larger packages was classified as an acid anhydride, dutiable at 15 per cent ad valorem under the provisions of paragraph 1 of said act. The pertinent parts of paragraphs 17 and 1 are as follows:

17. Chemical and medicinal compounds, combinations, and all similar articles dutiable under this section, except soap, whether specially provided for or not, put up in individual packages of 2½ pounds or less gross weight (except samples without commercial value) shall be dutiable at a rate not less than 20 per centum ad valorem; * * *.

1. * * * All other acids and acid anhydrides not specially provided for in this section, 15 per centum ad valorem.

The importers protested that the merchandise was free of duty under that part of the free list which reads as follows:

FREE LIST.

That on and after the day following the passage of this act, except as otherwise specially provided for in this act, the articles mentioned in the following paragraphs shall, when imported into the United States, * * * be exempt from duty: * * *.

387. Acids: * * * phosphoric, * * *.

The Board of General Appraisers sustained the protest, and the Government appealed.

The merchandise under consideration, due to its avidity for water and moisture, is used as a drying agent for laboratory purposes and is put up in bottles which bear the following label: "*Poison.* 1 lb. Phosphoric Anhydride Merck ("Anhydrous Phosphoric Acid") Perfectly White."

The appraiser reported that the merchandise described on the invoice as acid phosphoric $P_2O_5$ was a white powder which, when combined with water, formed two distinct acids known as metaphosphoric acid and orthophosphoric acid, the latter being the ordinary phosphoric acid. The appraiser stated in his report that the merchandise was the same article which was held to be free of duty as phosphoric acid under paragraph 482 of the tariff act of 1909. From this report it is apparent that the customs officials did not regard the article imported as phosphoric acid, but as the material from which the acid is made. Scientifically speaking, it may be that an acid anhydride is not an acid at all and that to make an acid out of it the chemical reaction produced by water or moisture is necessary. If, however, a commodity is uniformly, generally, and definitely known in the trade and bought and sold in the trade as an acid, it is for tariff purposes an acid and its scientific designation is not determinative of classification, inasmuch as the language used must be presumed to be that of trade and commerce and not that of science. The question in the case, therefore, is whether phosphoric anhydride is generally, uniformly, and definitely known to the trade as phosphoric acid and bought and sold by the trade under that designation. The uncontradicted testimony submitted to the board by the im-

porters established that phosphoric acid, as it is regarded in the trade, covers "phosphoric acid glacial," a form of hydrous phosphoric acid, "phosphoric acid sirup," a hydrous phosphoric acid, and "phosphoric acid anhydride," and that to fill an order for phosphoric acid it must be specified whether phosphoric acid in the glacial, sirup, or anhydride form is desired. From catalogues and price lists introduced in evidence it appeared that drug and chemical firms carried phosphoric anhydride as an acid and as a form of phosphoric acid. It also appeared that whether the anhydride is invoiced as phosphoric acid anhydride, or as acid phosphoric anhydride, or as phosphoric anhydride, the same article is meant, and that to the trade those designations uniformly and always signify a single definite form of phosphoric acid, and merchandise of the kind here involved. From that evidence we conclude that phosphoric anhydride is, commercially speaking, a form of phosphoric acid.

Moreover, paragraph 482 of the tariff act of 1909 provided for the free admission of phosphoric acid, and under that provision and on testimony substantially the same as that now submitted to us for consideration, phosphoric anhydride was admitted free as phosphoric acid. There being no change in the commercial meaning attaching to the designation "phosphoric acid," it must be assumed, therefore, that when Congress came to pass the tariff act of 1913 it was aware of the fact that in the trade and commerce of the country phosphoric anhydride was a form of phosphoric acid, and from that it follows that the retention by Congress of the designation acid phosphoric without qualification in the free list of the act of 1913 was a legislative approval of the classification of phosphoric anhydride as phosphoric acid. It is true that "acid anhydrides" were not specially mentioned in the tariff act of 1909 and that acid anhydrides not specially provided for are by name subjected to duty in paragraph 1 of the act of 1913, but that provision can not be construed as covering an anhydride which in trade and commerce is phosphoric acid and is specially provided for in the free list. And besides all that, as the term "acid anhydrides" includes the anhydrides of all acids it is more comprehensive and less specific than the designation "phosphoric acid," which embraces the anhydride of phosphoric acid only.

The decision of the Board of General Appraisers is *affirmed*.