**ALDRICH CHEMICAL COMPANY, Inc.**

**v.**

**UNITED STATES.**

**C.D. 3758; Protests 65/5897–3121 etc.**

United States Customs Court,
First Division.

April 2, 1969.

**1390**

&#9919;19

Bernard E. Edelstein, Milwaukee, Wis., for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Arthur E. Schwimmer, New York City, trial attorney), for defendant.

Before WATSON, MALETZ, and RE, Judges.

WATSON, Judge:

The subject of these consolidated protests, consists of certain merchandise hereinafter referred to as thioacetic acid. It was classified under item 425.98 of the Tariff Schedules of the United States with duty at the rate of 12.5 per centum ad valorem under the provision therein for "Other" acids. Plaintiff claims the merchandise properly classifiable at the rate of 10.5 per centum ad valorem under item 429.60 of said tariff schedules under the provision for "Sulfur compounds, including thiols * * ".

The pertinent statutes herein involved are as follows:

*Tariff Schedules of the United States:*

Schedule 4, part 2, subpart D (Organic Chemical Compounds) :

*Subpart D headnote:*

1. This subpart does not include any inorganic compounds. Organic compounds in this subpart are arranged according to functional group. Any organic compound which is described in more than one functional group is classifiable in the first group in which it is described.

\* \* \* \* \* \* \* \*

Acids:

\* \* \* \* \* \* \* \*

425.98 Other ............................12.5% ad val.

\* \* \* \* \* \* \* \*

429.60 Sulphur compounds, including thiols, sulfides, sulfoxides, and sulfones ..................10.5% ad val.

The issue in this case is whether or not the involved merchandise is properly classifiable under the provision for "Sulfur compounds, including thiols * * ", as claimed.

The record herein consists of the testimony of one witness for the plaintiff and, in addition, certain exhibits introduced by the plaintiff. Plaintiff's exhibit 1 shows the chemical structure of thioacetic acid, the material in dispute, namely, $CH_3C{<}{\overset{O}{_{SH}}}$. Plaintiff's exhibit 2 illustrated the structure of the compound acetic acid, namely, $CH_3C{<}{\overset{O}{_{OH}}}$. Plaintiff's exhibit 3 is a circled portion on a photocopy of page 191 taken from the Handbook of Pharmacology, 2nd ed., Cutting, Appleton-Century-Crafts, New York, 1964. The latter exhibit sets forth the structure of a drug, spironolactone, which was produced by using the imported thioacetic acid in question.

The official papers, including a report of the United States Customs Laboratory, were received in evidence without being marked. The laboratory report therein reads as follows:

The sample is thiolacetic acid.

Thiolacetic acid is both an acid and thiol compound.

Plaintiff's witness, Dr. Alfred Bader, is the president of the plaintiff corporation. The record discloses that he had received the degrees of bachelor of arts and bachelor of science as well as the degree of master of science in organic chemistry from Queens University, Ontario, and in addition, the degrees of master of arts and doctor of philosophy in organic chemistry from Harvard University. The record further indicates that plaintiff's witness had written a number of scientific papers and that he also held several dozen United States patents "pertaining to chemical processes" (R.5).

Dr. Bader, who stated that he had been active in the chemical field for 22 years, testified that his company manufactures several thousand chemicals and imports many starting materials and final products. The company also does contract research for the Government, as well as for private companies. The witness stated that he has had the responsibility for naming the organic chemicals purchased by his company (R.6, 9), in order to conform the foreign manufacturer's name for a chemical "to the American practice" (R.10).

Plaintiff's witness identified plaintiff's exhibit 1 as the structure of the chemical compound thioacetic acid (R.7–8). He stated that other appropriate names for this particular chemical would be acetyl mercaptan or acetyl thiol and that the "first name given to it in the chemical literature is acetyl hydrosulfide"; that thioacetic acid is the worst name; and that thio means that an oxygen has been replaced by sulphur (R.9–10).

Dr. Bader testified that the acidity of the acids specifically named in items 425.70 (acetic acid, plaintiff's exhibit 2) through 425.98 of the tariff schedules, is due to the presence of a hydroxyl group, that is, atoms of oxygen and hydrogen, in which the acidity of the compound results from a breakage of an oxygen and a hydrogen bond. He further stated that the thioacetic acid does not have a hydroxyl group; that its acidity is due to the breaking of an SH bond rather than an OH bond; and that an SH bond is common to all mercaptans and thiols.

Plaintiff's witness further testified that he has always used thioacetic acid "to add to double or to triple bonds"; that acetic acid or any acid will not add to double or triple bonds under the same conditions as thioacetic acid; that thioacetic acid has some acidic properties as have many other organic acids; that acetic acid is often used for its acidic properties whereas thioacetic acid "in practically all reactions" is not used for its acidic properties (R.16–18).

Dr. Bader further stated that the fact that the merchandise has acidic properties does not mean that it is an acid; that, generally, acids can be put

into water and recovered by distillation, while thioacetic acid is instable in water (R.18–20). The witness further testified that the importations in question were purchased by the plaintiff for a specific customer who used it in the manufacture of a drug (illustrated in plaintiff's exhibit 3).

On cross-examination, Dr. Bader testified that he purchased the merchandise from the manufacturer as thioacetic acid, and that he lists it in his catalog and sells it as such. He stated that the chemical in question is commonly known in the chemical industry in this country as either thioacetic acid or thiolacetic acid; that "acetic acid, thio" also refers to the imported substance; that it has the chemical formula $CH_3COSH$; and that the general formula for this type of organic compound may be expressed as $RCOSH$ (R.27). Continuing, he testified that, with the exception of the word "colorless", he agreed with the following definition of the term "thioacetic" "found in the 1951 edition of Webster's Second New International Dictionary":

> thioacetic—pertaining to or designating a colorless liquid acid, $CH_3COSH$, made by heating acetic acid with phosphorus pentasulphide and used as a chemical reagent.

The witness defined an acid as a compound having an ionizable hydroxyl group (OH), the hydrogen of which lends acidity to the compound and stated that that definition describes those acids which are specifically named in items 425.70 through 425.96 of the tariff schedules (R. 30). He testified that every thiol is "acidic" but admitted that not every compound within the thiol group has the word "acid" as part of its name (R.31).

The record discloses that plaintiff's witness agreed with the following definition "found in Webster's Dictionary":

> thio acid—an acid in which oxygen is partly or wholly replaced by sulphur. Organic thio acids are called thiolic acids ($RCOSH$), thionic acids ($RCSOH$), or dithioic (or dithio) acids

($RCSSH$), according to the nature of the replacement.

The record discloses that among the publications which Dr. Bader recognized as authoritative reference works in the field of organic chemistry, was "Chemical Abstracts", published by the American Chemical Society, hereinafter discussed in the determination of the issue herein.

Dr. Bader testified that he has ultimate responsibility for the preparation of the catalog put out by the plaintiff and that one of the sections of the catalog lists chemicals by "functional" groups. He stated that the plaintiff does not list the involved merchandise under the "thiols" and, further, that the catalog has no specific provision for acids other than carboxylic or hydroxy acids. The witness stated that the merchandise is not offered in the catalog as a "thiol" but as "sulphur compounds, miscellaneous" (R.37–39). Dr. Bader then stated that the term "hydroxy acids" is just a name "given those acids which contain the hydroxyl group in addition to a carboxyl group" (R.39). On redirect examination, Dr. Bader testified that thioacetic acid is a derivation of acetic acid and then stated that not all derivatives of acetic acid are acidic or "acid" (R.41).

■■ It is well settled that in the absence of a contrary legislative intent, tariff terms are not to be classified according to their scientific meaning where that meaning differs from the common or commercial understanding of that term. United States v. Sandoz Chemical Works, Inc., 46 CCPA 115, C.A.D. 711. It thus appears that under prior tariff acts, if a commodity is uniformly, generally, and definitely known in the trade and bought and sold in the trade as an acid, it is for tariff purposes an "acid" and "its scientific designation is not determinative of classification, inasmuch as the language used must be presumed to be that of trade and commérce and not that of science." United States v. Merck & Co., 8 Ct.Cust.Appls.

141, T.D. 37270. Admittedly, the merchandise in this case is "thioacetic acid". It remains to be determined whether it is dutiable as an acid as classified. In making this determination, recourse to the legislative history of the chemical schedule of the Tariff Schedules of the United States is deemed pertinent.

 The Tariff Classification Study of November 15, 1960, discusses in schedule 4 therein "Chemicals and Related Products". Said study, published by the Tariff Commission prior to the enactment of the Tariff Classification Schedules for use by Congress in passing upon the proposed tariff schedules, is authoritative for the purpose of determining congressional intent. Rifkin Textiles Corp. v. United States, 55 Cust. Ct. 341, C.D. 2600, aff'd., 54 CCPA 138, C.A.D. 925. The Tariff Classification Study, schedule 4, in its explanatory notes (pp. 2, 3) contains the following:

In proposed schedule 4, wherever possible the products have been described in technical, chemical terminology. The use of such terminology imparts greater certainty to the tariff descriptions. Persons trading in chemicals are generally familiar with technical descriptions no matter how they may otherwise describe their goods. * * *

* * * * * *

In the Tariff Act of 1930, organic and inorganic chemicals are provided for in numerous provisions found in schedules 1, 2, 3, 5, 15, and 16. The two "basket" provisions in paragraphs 2 and 5 of schedule 1 include a vast number of unrelated chemicals. There are few guide posts in the provisions which assist in the determination of the tariff status of chemicals which are described in more than one tariff description. Many organic compounds have multiple functions; for example, some compounds may be appropriately described as "alcohols" and also as "esters", both of which are specifically provided for in the existing schedule 1. This and many other overlapping, multiple descriptions, without any statutory language to show their relationships to each other, have caused much uncertainty and litigation which all too often has not provided any useful guide for the treatment of future imports. In schedule 4 all of the important organic and inorganic chemicals have been provided for, and much painstaking care has gone into headnotes and other provisions to the end that the relative specificity of the respective rate descriptions may be readily determined.

With respect to part 2, subpart D, of schedule 4, the study states (p. 59):

Part 2D includes each of the functional groups specified in the existing tariff act, but with broader, more complete scope, and also includes several additional groups of importance.

Because many organic chemical compounds are embraced within two or more different functional groups, these groups are arranged so that a compound described in two or more groups would be classifiable in the first group in which it is described. The order of precedence of these functional groups is generally that used in naming and indexing chemical compounds by Chemical Abstracts, a publication of the American Chemical Society. * * *

Plaintiff's witness acknowledged "Chemical Abstracts" to be an authoritative reference work in his field (R.31–32). The "Chemical Abstracts" method of naming chemical compounds for indexing is found in volume 56, "Subject Index A–H (January-June 1962), pp. 1N–98N. At page 12N, paragraph 83, of said volume, under the heading "Order of precedence of functions", the following is stated:

* * * In compounds of mixed function, C.A. determines the chief function from the following order of precedence:

Onium compounds, * * *, acid, * * *, thiol, * * *.

It will be noted from the above, that the "acid" function precedes the "thiol"

function. This in our opinion, supports the conclusion that the merchandise is properly classifiable as an "acid", since as heretofore noted in part 2, subpart D of schedule 4 of the tariff schedules, "a compound described in two or more groups would be classifiable in the first group in which it is described."

A further factor in support of a finding that the thioacetic acid in question is properly classifiable under item 425.98 of the tariff schedules may be found in the treatment given "Organic acids" at pages 26N–32N of "Chemical Abstracts". Included among the subjects therein are carboxylic acids (paragraphs 159–173), thio acids (paragraph 174), hydroxy acids (paragraph 187) and many other organic acids. Plaintiff's witness agreed that "acetic acid, thio" is thioacetic acid (R.27). With respect to thio acids, the discussion in "Chemical Abstracts", at page 30N (paragraph 174) reads in part as follows:

> *Thio acids.* The names for thio acids follow closely those of the corresponding oxygen acids and they do not distinguish between the oxo and hydroxy substitution. Thus, the name Acetic acid, thio—represents both $CH_3C(:S)OH$ and $CH_3C(:O)SH$.

In this case plaintiff's witness agreed that a "thio acid" is an acid in which oxygen is partly or wholly replaced by sulfur (R.31).

In the aforesaid volume 56 of "Chemical Abstracts", at page 65N, paragraphs 443–446, thiols are separately discussed in part as follows:

Thiols (mercaptans)

443. Thiols are named by adding the suffix thiol, dithiol, etc. to the name of the parent hydrocarbon or ring system.

\*　　\*　　\*　　\*　　\*　　\*

445. Complex or mixed functions. The thiol function is outranked in the order of precedence (paragraph 83) by a number of functions such as *acid*, \* \* \*. [Emphasis supplied.]

It would thus appear that the authority on chemical terminology to which Congress expected the collector to refer to in classifying organic compounds, namely, "Chemical Abstracts", recognizes the involved merchandise to be an "acid". Other technical authorities are in agreement with this conclusion. In the Encyclopedia of Chemical Technology, Kirk and Othner, 1955 ed., volume 14, in its article on thio acids, at page 59, states in part:

> *Nomenclature.* For the acids themselves, including those containing oxygen, *as well as sulfur,* a general (thio) name with no structural implications is preferable to a thiol or thiono name; for example, monothiodithiophosphoric acid, *thioacetic acid.* \* \* \* [Emphasis added.]

Plaintiff's contention in this case that Congress intended items 425.70 through 425.98 to include only those acids having an ionizable hydroxyl group is, in our opinion, without merit. The Tariff Classification Study, page 48, discloses that the "superior heading" for items 425.70 through 425.98 of the tariff schedules, as originally transmitted to Congress read as follows:

> Acids, including halogenated, hydroxy, sulfonated and other substituted and unsubstituted acids:

Thioacetic acid is apparently a substituted acid. The Condensed Chemical Dictionary (1961 ed.) defines "substitution" as "any chemical reaction in which one element replaces another in a compound." The superior heading above referred to, was amended in the Fifth Supplemental Report of the Tariff Classification Study at page 26, to read as follows:

> Items 425.70–.98—Acids: Delete the superior heading to these items and in lieu thereof substitute the following:
>
> Acids:
>
> Explanation: Shortening the heading does not change the scope in any way; it makes the wording comparable to that used for other functional groups. The subpart D headnote makes it clear

that *any organic acid not containing nitrogen* would be classified hereunder, regardless of any of the other functional groups. Such compounds would include halogenated, hydroxy, sulfonated and other substituted and unsubstituted acids. (Emphasis added.)

It would thus appear that Congress was informed and aware that any organic acid not containing nitrogen, and not specially named in items 425.70 through 425.96 of the tariff schedules, would be classified under item 425.98. In our opinion, inasmuch as thioacetic acid is both chemically and commonly known as an organic acid, it was properly classified under item 425.98 under the provision therein for "Other" acids.

 Plaintiff contends that the principal use for the imported thioacetic acid was as a thiol, and not as an acid. (Plaintiff's brief, page 5.) It has been held that in determining the classification of an article, use is a relevant factor in such determination even though an *eo nomine* provision is involved. United States v. Quon Quon Company, 46 CCPA 70, C.A.D. 699. However, in our opinion, this consideration must yield to congressional intent. The legislative history of "Chemicals and Related Products", schedule 4, Tariff Schedules of the United States, above referred to, persuades us that chemical terminology, not actual use, or even chief use, is to control in the classification of the importation in question. For the reason heretofore advanced, we hold the merchandise properly dutiable at the rate of 12.5 per centum ad valorem under the provision of item 425.98 of the Tariff Schedules of the United States as "Acids: * * * Other", as classified. The protests are overruled. Judgment will issue accordingly.

## SCHEDULE OF PROTESTS

| Protest | Plaintiff | Entry |
|---|---|---|
| 65/5897–3121 | Aldrich Chemical Company, Inc. | 2802 |
| 65/5898–3130 | | 3935 |
| 65/5899–3131 | | 51 |
| 65/5900–3143 | | 1200 |
| | | 1621 |
| | | 2098 |
| | | 2801 |
| | | 3354 |
| | | 2952 |
| 67/10082–3151 | | 3373 |
| 67/10083–3153 | | 3041 |

Entries retained for appeal time.