(C.D. 2901)

F. W. MYERS & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 23, 1967)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Richard J. Kaplan* and *James S. O'Kelly*, trial attorneys), for the defendant.

Before, RAO, FORD, and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise of this protest consists of "Nenette" standard and junior dust-absorbing polishers, with refills which were entered at Ogdensburg, N.Y., from Canada. The polishers and the refills covered by entries numbered 12836 and 13520 were classified in liquidation as articles in part of braid under 19 U.S.C.A., section 1001, paragraph 1529(a) (paragraph 1529(a), Tariff Act of 1930) as modified by T.D. 54108. The refills covered by entry number 11530 were classified in liquidation as non-enumerated manufactured articles under 19 U.S.C.A., section 1001, paragraph 1558 (paragraph 1558, Tariff Act of 1930) as modified by T.D. 52739.

It is plaintiff's contention that the polishers should be classified under the provision for cotton manufactures, not specially provided for under 19 U.S.C.A., section 1001, paragraph 923 (paragraph 923, Tariff Act of 1930) as modified by T.D.'s 53865 and 53877, and that the refills covered by entries 12836 and 13520 should be classified, like those under entry 11530, under paragraph 1558 as non-enumerated manufactured articles. At the trial counsel stipulated that the refills were not in part of braid, and that they were non-enumerated manufactured articles, not specially provided for in the Tariff Act of 1930. Counsel

also stipulated that the polishers are composed of materials in chief value of cotton. In view of these stipulations, the issues presented for determination are narrowed to the single issue of whether the involved polishers are in part of braid.

The competing paragraphs read as follows:

[Par. 1529(a), as modified]   Articles (including fabrics) wholly or in part of any product provided for in paragraph 1529(a), Tariff Act of 1930:

> Provided for in subdivision [11] of paragraph 1529(a):
>> In part of braids not suitable for making or ornamenting bonnets, hats, or hoods, but not in part of lace and not orna-mented (except gloves and mittens)___ 42½% ad val.

[Par. 923, as modified]   All manufactures, wholly or in chief value of cotton, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

> Other (\* \* \*)_____ 20% ad val.

At the trial Sheldon Hamer, vice president and manager of Ne-nette Products, Ltd., the Canadian exporter of the imported mer-chandise, was the only witness to testify. It was brought out in the testimony of this witness that the involved polishers, a representative sample of which is in evidence as plaintiff's exhibit 1, are principally used to shine automobiles and household furniture. An examination of exhibit 1 discloses it to consist of two basic parts, namely, a "U" shaped mop head, and a two pronged plastic handle. The handle prongs have been inserted into the open ends of the mop head crown, and the two items have been secured together by means of two strings secured to and trailing from the crown, which have been inserted through an aperture in the exposed portion of the handle, and tied around the handle. Suspended from the crown of the mop head end to end are multiple twist-shaped strands or strings measuring about 2½ inches in length, comprising the "mop." Mr. Hamer testified that the mop head is made of cotton yarn which has been treated with a dust-absorbent chemical, and that the mop head can be removed from the handle, washed, chemically retreated, and put back over the handle again. It appears that in earlier importations the handle was made of wood, while in later importations the handle was either of wood or plastic composition.

Also in the record as plaintiff's collective exhibit 2 is an opinion, dated March 2, 1961, rendered by the Bureau of Customs in response to inquiry by the exporter herein regarding classification of certain pol-ishers and a packaged liquid described as Nenetol, and said to be used to impregnate mops for polishing purposes. The opinion classifies the Nenetol under paragraph 1558 and the polishers under paragraph 923.

The controversy centers around the two strings which Mr. Hamer says "merely holds the mop to the handle." The strings are flat and "braided." Plaintiff maintains that the "braiding" of these strings does not denominate the polisher an article in part of braid within the meaning of paragraph 1529(a) because the "braiding" is not ornamental, but utilitarian only. Defendant argues that the "braiding" need not be ornamental in order to qualify the article in question for classification under paragraph 1529(a) as a "braided" article. No question is raised that the tieing strings are not in fact "braided."

We are of the opinion that the polisher is "braided" within the meaning of paragraph 1529(a). In *Bertha B. Maupin* v. *United States*, 31 Cust. Ct. 355, Abs. 55715, the merchandise before this division of the court was blouses whose sleeve hems *concealed* a strip of braiding which had been put there for the very utilitarian purpose of causing the sleeve of the blouse to gather or pucker and thus make the sleeve more attractive than it would otherwise be. The court reviewed the decisions bearing upon paragraph 1529(a) classification of braided articles, among others, including some of the decisions to which our attention has here been called in plaintiff's brief. The court concluded that concealment of the strip of braiding (which obviously robbed it of any character or ornamentation) did not deprive the article of its paragraph 1529(a) classification as wearing apparel in part of *braid*. The court's decision was predicated upon a holding that ornamentation was not essential for classification of braided articles under paragraph 1529(a) in view of the exclusion of use as a classifying factor which is written into that portion of the paragraph having to do with the classification of braided articles. The decision in *Bertha B. Maupin* is *apropos* the instant case and is dispositive of the issue here involved. Accord, see *United States* v. *C.I. Penn*, 27 CCPA 242, C.A.D. 93, *affirming* 2 Cust. Ct. 295, C.D. 146.

In addition to the cases discussed in *Maupin*, plaintiff appears to rely on *United States* v. *Hochschild, Kohn & Co.*, 31 CCPA 98, C.A.D. 255, to support its claim. Our examination of this case fails to reveal any basis of support therein of the argument advanced by plaintiff. In the *Hochschild* case classification of infants' woolen sacque sets under paragraph 1529(a) was rejected by the courts because the edgings of the suits served a utilitarian function and not the function of ornamentation, and hence, could not be deemed to be "trimmings" within the meaning of paragraph 1529(a). However, not only did the court there determine that the common meaning of the word "trimmings" embraces the concept of ornamentation—a concept not essential to an understanding of the ordinary meaning of the word "braided," but also, the word "trimmings" is not within that portion of the paragraph dealing with "braided" articles and parts. Conse-

quently, the issue raised in the instant case was not before the courts in *Hochschild*.

Neither do we find any persuasive value in the Bureau's opinion contained in collective exhibit 2. It does not appear in that opinion whether the polishers there under consideration possessed the "braided" tieing strings which characterize the involved polishers.

It follows from the foregoing that the collector's classification of the polishers was proper, in consequence of which, the protest claim for classification of the polishers must be overruled. In view of the parties' stipulation, the protest claim for classification of the refills covered by entries 12836 and 13520 is sustained.

Judgment will be entered accordingly.